May it please the Court. This appeal should begin and end with this Court's precedential 2020 opinion in Keohane. Keohane holds that a prison does not violate the Eighth Amendment by refusing to grant special access to clothing and cosmetics for an inmate with gender dysphoria. Our record shows the opposite of deliberate indifference. Plaintiff here has an individualized treatment plan for gender dysphoria that includes hormones, psychological care, female undergarments, and special security precautions such as the ability to shower alone. Yet the district court held that the Eighth Amendment requires even more clothing and grooming products. Keohane helps you a lot but it doesn't stand for the proposition that you could never have an Eighth Amendment claim. I mean Keohane was based on a certain record and based on that record the panel made certain legal determinations right? Yes your honor and I don't read it that way and I think the two key pieces of Keohane are are these items medically necessary and then the security piece and I think our case is actually easier than Keohane because on medical necessity we offered Dr. Stephen Levine an esteemed psychiatrist in this area who testified in Keohane and the court credited his testimony and on security I don't need to recount at all but this this inmate in addition to being in prison for violent sexual offenses has an extensive record of crimes and misconduct in prison including I think I think you know in support of your case I think one of your strong arguments is that the district court just didn't adequately account for the affidavit of the warden on security concerns right now I don't know what the district court could or could not have done in sort of weighing the evidence about the security concerns there's this evidence about maybe the warden having allowed Doe to have used her own padding at some point for a limited period of time I don't know but I think the district court at least given Keohane had to confront the statement of the warden in the affidavit that this presented security and safety concerns right so a couple points on that so Doe is in administrative segregation which is not to be confused with solitary which is for punishment administrative segregation is for individuals with difficult management issues frankly because of misconduct in prison it's to protect the other prisoners from Doe and what it works the same way physically right not entirely but yeah but generally it's more segregation you're by yourself yes but the warden specifically says because Doe is in administrative segregation and has a history of escape attempts we have to be very careful about these special items and then on the question of the warden allowing it my colleague it's it's in the transcript where my colleague addressed this so first of all the warden had confiscated the padding at some points in the past but I don't think not enforcing the rules for a limited time even if that happens can convert something into an eighth amendment problem to me it seems is it just as a legal error it appears that the district court thinks that the provision of sophisticated care for the treatment of the of the inmates condition somehow mandates that the provision of less sophisticated you know treatment that that and not doing so somehow violates the Eighth Amendment I'm just lost about how that and a right as a matter of law and your honor it's actually more than that because in Keo Hain the court says at page 1276 this is not a denial of care situation we are giving extensive care just not doing everything the plaintiff wants and so Keo Hain specifically says in that situation where you're doing a lot but not everything we're going to be super deferential on security concerns because we're not saying we're not doing anything forgot about that we're not treating this we're saying you can have this this reasoning is I read that that order is well you're giving this more sophisticated care so it's a violation of the Eighth Amendment not to give the less sophisticated care isn't that what the district court said yes well and and I think it's I think part of the confusion is over so the district court said I credit the plaintiffs experts on medical necessity but there's a problem they didn't use the Eighth Amendment definition of medical necessity so they used this is it's dr. let me see it's dr. Lowell their experts report paragraph 24 and then they argued this to the district court that medical they say medical necessity is anything that treats a condition and specifically say it's not a high bar that's the opposite of the standard in Hoffer Keo Hain Ward this court says in the Eighth Amendment it's a steep hill to climb it has to be so grossly incompetent inadequate or excessive as to shock the conscience so I don't dispute that their experts said this is medically necessary they were not using the Eighth Amendment I didn't mean I didn't mean to interrupt you I'm sorry no or just to close the thought or it essentially the insurance standard so the sort of standard they used would be if you're trying to get something paid for by insurance you would say oh it's medically necessary so it's appropriate it's indicated that sort of thing but their experts weren't applying the Eighth Amendment so don't but don't our cases sort of deal with that with that scenario by saying if there's a difference in opinion as to medical necessity then it's not deliberate indifference absolutely and again and you see they don't but they don't say there's no medical necessity they just say you can't a prison official can't act in a deliberately indifferent way under the Eighth Amendment if medical professionals differ in their opinions about whether or not a certain mode of this is not medically necessary they just say I'm not saying all of our cases but some of our cases indicate that you you take care of that scenario under deliberate indifference pronged by saying if you have a difference of opinion by reason medical professionals then the choice of prison officials for one over the other can't be deliberately indifferent I agree with that your honor and again using the language that this court repeatedly uses Keohane Hoffer Ward so grossly incompetent or inadequate and if and if there is a difference of opinion I don't think you could say you would say there's a zone of treatment where the Eighth Amendment simply doesn't dictate that you pick this over this and on this question of necessity again what Levine who again who testified in Kossilich who testified in Keohane several of the leading cases in this area what Levine and Kalibe say is everyone in prison wants something different in terms of their grooming everyone wants different grooming products different cosmetics different clothes and that may be something the inmate wants it may be something that's good question here did Levine actually examine the plaintiff in Keohane I don't know he did not hear well so Levine and Kalibe so first of all Keohane was a trial on the merits and we were a PI hearing and so no I understand that I was just curious whether the psychiatrist in Keohane had actually examined the person seeking the care and the treatment so a couple things we have an opinion here it doesn't mean the opinion is worth nothing I'm just asking whether these psychiatric experts examined the plaintiff in the other case I know they did not hear oh I'll check on that and report in rebuttal I don't know if they haven't had but a couple of points in that your honor so there's no blanket rule that an expert can't testify if they didn't physically need not argue that point I understand that's true and let me make one other point about the plaintiff's experts the plaintiff's like you see there there's there's some difference for example if you had a prisoner who was diabetic and you didn't give them insulin an endocrinologist could give me an opinion worth its weight in gold without actually examining the inmate on the other hand when sometimes you're talking about psychiatric disorders the capacity to speak directly might be relevant in determining the strength the validity of the opinion being offered and that's why I was simply asking I'm correct that in this case the psychiatric experts for the state did not actually examine Jane Doe correct now again to be clear it was a preliminary injunction on a very tight right table and they did review medical records I would also like to point out the plaintiff's experts were not longtime treating physicians the plaintiff's experts testified at the hearing I believe they had met with the plaintiff but for 60 minutes by zoom or so which I'm not discounting but it was fairly limited one right one interaction there and again and of course nothing prohibits a psychiatrist from talking about general principles of both medical care and prison administration may I if the court has no further questions just a minute on pseudonymity so we have an odds and it seems to me that there's no appellate jurisdiction over the district courts order about proceeding anonymously this is an appeal of a to review the grant of the preliminary injunction but it seems to me only that and not every other kind of order that's going on here I disagree with that your I mean and I would point to two things so literally the first two words of the preliminary injunction order are Jane Doe instead of the plaintiff's name and so I don't know how the pseudonymity order doesn't merge and again even as I'm standing here but the proceeding anonymously is something that's for all purposes in the district court isn't that right okay then if I can switch points in this court as we sit here today yeah it seems to be an end run around the jurisdictional problem and and where we owe considerable deference to the district court about about whether to proceed anonymously to now achieve because there's an appeal what what you couldn't achieve by virtue of the you know appeal of the preliminary injunction itself as to what's going on the district court you you know that that troubles me okay the last thing I'll say about this I won't belabor it the volumes four and five of the sealed appendix there are four documents I urge the court to look at the first it's a declaration Doe filed in a previous case publicly available on Pacer there's a complaint Doe filed in 2018 against prison officials publicly available on Pacer a complaint from 2022 and then a judicial opinion in volume five of the sealed appendix those four documents name Doe identify Doe as transgender demand additional services as we sit here today in this court those are under seal even though they're public documents and so again I won't belabor the point and I would like to ask you a little bit about this point too if I understand this right much of the entire record of the preliminary injunction hearing in this very case remains under seal as we speak now do I have that right including among other things the transcript of the preliminary injunction hearing is sealed so if we were to rule X or Y and somebody wanted to look at why we did what we did they would have no access to the actual hearing conducted by the district court correct correct and I take it they would have no access to any of the prior complaints in the past lawsuits those are sealed up they would have access because they're public documents which is why we've sealed them at least they remain sealed in this in this courtroom the medical examinations that were done for this case remain under seal here correct the expert reports are public but many of the underlying documents are sealed yes I meant doctor went out examined the patient wrote notes reached the conclusions that's all sealed up and other legal filings which might otherwise reveal the name let me ask the question this way is it not possible to keep the name under seal redact that from the rest of the record and make it part of the public record so that if John Q public wants to walk in here and understand what's going on and why there's a record to be reviewed or will he simply have to rely on our good faith in the order we enter we wouldn't we wouldn't we certainly wouldn't oppose that again we think any of the ceiling was inappropriate and again within the prison everyone in the prison knows who the plaintiff is and that the plaintiff is going I appreciate that I don't think I've made my question clear isn't it possible to disgorge the whole record and still keep the name secret of course thank you thank you okay council we'll hear from opposing counts now council danger good morning your honors dee danger and for the plaintiff appellee may it please the court I'd like to make three main points and I'll just pick up right where you left off judge Marcus the district court does judge as chief judge prior said lack jurisdiction over the appeal of the issue and it is an end run to go through the motion and do the same analysis and so the name as well as the medical history the sensitive medical information was what the district court based its ruling on in the pseudonym order so even if you've redacted the name the actual medical information is also meant to be under seal and the district court actually has entered an order that at the end of proceedings the parties are to meet and confer and decide what can be unsealed and so you know though immediately after this appeal the transcript may not be available perhaps that is one way that we can move forward in the future to redact the name but there are there are cases in which you can seal medical records I'm sorry there are cases in which you can seal medical records to protect the identity of the person to whom those records belong and yet not seal the transcript of an entire hearing completely and so that you can partially redact I'm not saying that's appropriate here I haven't done that analysis but I'm saying complete sealing is not always necessary or the or the answer I understand your honor and that's been the approach that the district court has made in many of the other filings and leaving it to the parties decide what to seal or redact it is not the case that the entire record is under seal and there are some redacted versions I'm actually not certain if the entire transcript is under seal and so your colleague said the preliminary injunction transcript is under seal is that correct he did say that I don't know the answer right now your honor so I don't I just let me ask just one quick question on this pseudonymity and then we go on to let's call it the main event but as to the pseudonymity issue did not the plaintiff disgorge essentially all of this terribly personal and tragic information into the public record in lawsuits that were filed disgorged a being gender dysphoric be various problems that arose from that including several suicide attempts and several attempts sad tales of inflicting harm isn't that all in the public record anyway and if that is the case why should all of this remain under seal I agree with you that we don't have the authority to review his the district court opinion but we most assuredly have control over our own and what's filed in our court and what's kept secret and what isn't so I want you to tell me why in your view all of this stuff having been publicly disgorged in other lawsuits at other times there's any reason to keep it sealed up in this courtroom at this time for this review of this preliminary injunction order yes so first Ms. Joe did not have the benefit of counsel in the past and maybe did not realize she could have pursued her litigation under a pseudonym and what she did in the past should not dictate what can happen here but more to the point in this current political climate transgender people are at risk of very specific forms of abuse she's actually received a letter recently this is out of the record but to answer your honor's question she received a letter from someone she does not know saying they're watching her case and they're aware of who she is and she was very horrified by that and so there is a fear that with the details of what she has put forth and the fact that she has succeeded in getting some preliminary injunctive relief that that could upset people and that if they knew her name and knew the care that she's received recently but also knew the specific things that happened after her last public filing in the year 2023 none of that was on the record in any of her previous filings so there is actually new information so is it practicable to ask at least my last question in this area for this court to leave it to counsel to tell us what has to be sealed up to secure the name and nothing else your honor I think that could be a fair resolution yes so moving that the wisest way to proceed here well your honor if it's the decision you accept the importance of a public record in you know in a court of appeals I certainly do your honor and I think the public record is is very much available in the in the public filings already the briefs are publicly filed right but the transcript of the very hearing is not your honor if the transcript is what needs to be redacted for the name I agree I think that sensitive medical information did not all make it to that transcript okay but yes I'd like to move now to Kohane and I believe from listening to the arguments it's pronounced in his Kohane so Kohane does not require this court to overturn the district courts injunction in Kohane the this court found the plaintiffs hair length and makeup requests were not medically necessary it seems to me the district court just engaged in blatantly erroneous reasoning and concluding that because your client was receiving this more sophisticated care that it was somehow an eighth of it amendment violation to not provide the less sophisticated care that is the subject of this appeal why am I not right about yeah I hear you Chief Judge Pryor there's a very specific way to move forward here that I actually disagree with the way you framed it as less sophisticated I'm just reading the order yes so there is a clear agreement from the parties that there's a serious medical need that's the first legal question but there's a serious medical need and that is and that there's a provision of care for that need so the provision of care that is medically necessary is feminization and the effect of feminization is what our client was able to achieve receiving the correct amount of care from 2015 to 2019 she experienced breast growth and reduction of body hair that is a constitutional violation though it has to be so grossly incompetent inadequate or excessive as to shock the conscience and and and and and it's not that the prison's not providing some treatment the prison is well your honor and the district court concluded that because it was providing that treatment it was somehow also required under the Eighth Amendment to provide the treatment that we're talking about here I don't understand that yes your honor I'd like to explain it to you so actually Ancada says that there's a constitutionally adequate that's the that's the level and minimally added minimally adequate care is the standard and so the question at hand is whether the care she was receiving was minimally adequate and so what plaintiff is arguing and what district court reasoned that it was not because there was this provision of more sophisticated care that's what the district court said it's not more sophisticated care your honor it really is but certainly more expensive would you agree no I actually don't know if the provisions provided just now is more expensive than some forms of care our client could receive but I think that the key point is that the effectiveness of the care currently provided your honor is not creating the feminization effects and dr. Malloy her endocrinologist from the GDC actually conceded to her directly and this is on the record that she will not receive the feminizing effects on the dosage he prescribed her that it would need to be a higher level and so that's the real issue but you know the treatment that is being provided is not the one that provides the same kind of security concerns that the treatment that's not being provided does and and it seems to me not to be grossly incompetent on the part of the prison and a constitutional violation to strike the balance that way so your honor again there's a difference between the medically necessary care and the constitutional element I'll get to the constitutional element but I just want to make sure for medically necessary care first because that's separate from the security risk rationale which I will also turn to the medically necessary care our friend on the other side has tried to downplay it by saying that it's a low bar and that's what our expert stated but actually medically necessary care as defined by the Medicare statute is medical care or services needed to diagnose or treat an illness injury condition disease or its symptoms that meets accepted standards of medicine and so this court would need to overturn the district courts finding a fact that there was a court also made that finding based on an erroneous understanding of the record I mean just totally it said that the warden didn't address the security concerns when in fact the warden did your honor again the security concern is separate from the medically necessary care but I can turn to security concerns briefly before you get to that before you get to security if I while we're talking about this issue do we not have evidence in the record substantial body of evidence in the record that flatly disputes the proposition that these items are medically necessary we have a report by Levine in the report he says so social transitioning items are not medically necessary they might be quote psychologically helpful but they're not medically necessary then we had a report from a testimony to that effect and then we had a report by Khalid in this area basically saying the the same thing and of course we've got obviously competent and capable psychiatrists on the plaintiff's side who say it's not only medically necessary it's medically imperative I think it's the phrase that one of them uses but don't we have very collision that the circuit considered earlier in kill harm the case that Mr. Harris made reference to that you've got poles in opposite directions on this question and that if you do whatever else you can say maybe maybe you could say it's negligent conduct but in no sense could that amount to care that so grossly incompetent inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness that the very nature of the dispute from competent and warring experts renders the eighth amendment claim nugget or because you can't meet the high standard the chief judge made reference to that for you how do we get around the fact that this contrary evidence here a substantial body from two psychiatric experts and no one saying that they're not competent to open in the field so your honor multiple ways so first as I think your honor acknowledged already dr. Levine and dr. Khalid they did not evaluate our plaintiff the call from the eighth amendment is for an individualized medical assessment and for that reason there's actually no dispute between any of the medical providers who's actually met with our client and the experts on the record you would agree offered this example to Mr. Harris a moment ago if an endocrinologist offered the opinion that you had to give insulin to a patient who was plainly type 2 diabetic or maybe even more type 1 diabetic and the failure to do that would be plainly a violation of the lowest standard of care that you would have to do he wouldn't have to actually see the the plaintiff to do that he could render and we get forensic opinions all the time from doctors who don't see the party but they rely upon a sufficient body of competent evidence that sounds like to me your honor like trying to establish what exactly the medical standard of care is and that's very different from applying that center of care to the actual plaintiff involved dr. Levine actually stated and this is at plaintiff supplemental appendix think what he's doing is if we assume for the sake of the argument that this person has this condition then you would have to at a minimum provide this care why can't you also assume that the who suffers from gender dysphoria has to be provided the cross hormone treatment but not but not these other things that would be psychologically pleasing and that pose legitimate prison concerns and experts for the state actually have correctional experience and and and know about the balancing of risk here your honor because that's but the precise type of blanket ban or classification denial of types of care that cohane rejected dr. Levine actually here though did not state that social affirming items would never be permissible at plaintiff supplemental appendix 259 there's a quote from Levine's declaration paragraph 7 where he says social treatments are a recommended treatment for preventing suicide and so here our client has exhibited so many types of suicidal and self castrated behaviors and self injurious behaviors that the care that she needs is the feminizing effect of gender affirming care that hormone therapy did not have a time so can I yes I am your honor can I ask you to address what I think is a problem for you in this case and that is that whatever Keoghane stands for read narrowly broadly it certainly says that you have got to take into account and seriously consider the concern of prison officials about safety and security when dealing with providing these sorts of things I know that the items in Keoghane were different than the items here I I understand that factual difference but here the district courts order seems to have these are my words ignored the warden's affidavit with regards to the safety and security concerns that he thought were created by the provision of these items what what's your response your honor the first response is the warden the warden did state elements about escape and enticing others which are similar to the those in Keoghane which was specifically enticing others but this court did do the proper weighing of the medical need with the security risk rationale and I think one element to that that you know and it's clear and I put in my briefs where exactly that is but the warden knew about the use of makeshift padding and that's something that at footnote see but I'm not saying that the district court would have been stuck with the warden's view about safety and security there may be a case out there where a safety or security concern is so outlandish so improbable that a district court can weigh it relatively lightly but here the district court didn't really in my opinion take into account the warden's affidavit it's hard to say it didn't say I hear what you're saying as a fact finder I discounted for these reasons it just didn't seem to think that there was any testimony from the warden about safety and security with regard to these items am I mistaken no I agree your honor and that's why we made the harmlessness inquiry but again the warden's statements about makeshift but it's hard it's hard to argue harmlessness when the fact finder is the one who doesn't take into account significant evidence probative evidence well under the clear error standard in the actual use here I do think that would be relevant right I think that the the finding of fact made there were multiple findings of fact but the one made here was that and it's a finding of fact that there's not a security risk that overcomes the medical here's the problem at least from my perspective and I really would appreciate your helping me with it one I begin with the statute the very preface in the prison litigation reform act the very first paragraph talks about narrowing and all this and then it says quote the court shall not may shall give substantial weight to any adverse impact on public safety or the operation of the criminal justice system caused by the relief the case law all says that but Congress very specifically wanted to send a message to the federal courts when they wrote that prison litigation reform act and put that language in now if you look at the judge's order the preliminary injunction order he says among other things on page 24 this is the hard copy of his opinion defendants didn't really raise a security concern over padding one of the defendant's psyche psychiatry experts opine blah blah blah but even putting aside the court's doubts regarding the experts qualifications to testify about issues of prison security defendants did not mention the concern in their brief and then we get to the critical sentence I want you to help me quote defendants presented affidavits from two people who work at prisons Perrin Warden Jones and Ahmed Holt but neither of them averred that providing plaintiffs padding would pose a security concern that's flat-out wrong it not only ignores it it misstates the record and my question to you is how could we say that the district court gave substantial weight to any adverse impact on public safety if it fails to even recognize that there is some competent testimony from the warden of this very prison that providing the padding would in fact impact on the public safety isn't this right off the bat clear error I agree your honor that there there is a complete misstatement there the following sentences on page 25 are where I would direct your honor to read next because the court did discuss the possibility of the risk and by assessing the fact that warden Jones allowed the use of the makeshift padding this is the same thing that would have if the court actually in the statement before had said the correct thing it would have been weighing what actually happened in the evidence on the record of what happened with the testimony made for trial and it's it's important that it was made in Johnson versus Lewis from in this court if the reasons are produced for litigation that's relevant and so I do think that what actually happened versus what was produced for litigation would be the way it would resolve we would need to rely upon it's basically a harmless error argument yes your honor it is I just want to ensure that there's I just want to make sure that this court understands my medical necessity necessity argument but I know I'm way over time way over and let's let's get it get I'll give you 15 seconds thank you your honor the care provided will eventually take place with the hormone therapy provided your honor has framed that as a sophistication difference but it really is what the net what the need now in this inquiry of PLRA requires to keep our clients safe and alive until the HRT takes effect this care is necessary for that reason you should affirm I think we understand council Harris thank you your honor just a couple of very quick points in rebuttal so first of all my friend quoted the definition of medical necessity from the Medicare statute which again of course is not the Eighth Amendment statute the Medicare statute does not say care need not be perfect or adequate or even very good it just need not be grossly incompetent so once again that's not the definition we're doing under the Eighth Amendment the second point on this question the district court seemed to use this syllogism which my friend just said as well of since the hormones may have a feminizing effect why wouldn't you just do the other items too that is almost verbatim an argument that was raised unsuccessfully in Keohane so the plaintiffs expert in Keohane this is page 1264 said it would be medically and logically inconsistent and potentially harmful to do the hormone treatment because remember the plaintiff in Keohane was getting hormones just like our plaintiff and yet the court still said it wasn't constitutionally obligated to do the other items so the same argument was made there and it didn't work the third quick point my friend mentioned the suicide prison takes that incredibly seriously and acts every day to protect plaintiff and all other inmates from harm to themselves or others but the First Circuit explained this very eloquently in Kossilak the en banc opinion which said it cannot be that prison officials must in response to a threat of suicide simply give the inmate whatever is demanded because that creates terrible incentives for order so we take this incredibly seriously and again the prisoner is a level three mental health offender who has several comorbid conditions in addition to this and that results in extra monitoring extra care extra services so we take that incredibly seriously on the unsealing the hearing transcript subject to redaction of the name I don't agree with the second part but we'd be happy to we'd be happy to do that and I just said that I'm not certain about that it's in the sealed appendix in this court which is what I based my answer off of but I understand let me ask you just an overarching question that troubled me from the beginning when I know we have to defer or give reasonable consideration to prison officials who say they're powerful security problems here and I know that Jane Doe has attempted escape attempted mailing a bomb a variety of very serious security issues but everybody agrees she's gender dysphoric and the prison agrees that she's entitled to treatment and among the treatments that they've offered is this hormone replacement therapy which would make her look more feminine so you're going to do the very thing that you suggest will create a big security risk the warden says in substance and your psychiatric experts say more or less the same thing if she's given this padding and this hair cream removal it will enable her to look more feminine the warden says if you do that that's going to run right smack into this powerful security problem and yet you're actually going down the road that creates that very security problem what am I missing here a couple quick points if I may the so the first thing is that's exactly that was true in Keohane as well and I understand that and then of course the padding there is a difference in between giving an inmate something to physically put in their clothes which obviously poses contraband risk and then the last thing I'll say we address this at 22 to 23 of our opening brief there's another security concern which is it is imperative in a prison to have uniform rules and for example the hair removal cream when an inmate gets what looks like special access to something or an item that's not otherwise available it creates questions of fairness or retribution I accept all of that but by going forward with the hormone treatment don't you create the very problem you say you have to avoid and therefore or not to provide the padding our officials have decided that the padding does pose unique concerns and we believe that was entitled to deference to concerns beyond changes the body thank you very much thank you thank you counsel we're gonna move to the last case